UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KELLY BROWN and STEPHANIE FORRESTER,**
**Individually, and on behalf of all**
**Others similarly situated,**

      **Plaintiffs,**

**v.**                           **Case No: 8:18-cv-1772-T-35CPT**

**OMNI MANAGEMENT GROUP LLC, ALL**
**SEASONS TRAVEL AND RESORT INC. d/b/a**
**VACATION VILLAS OF FLORIDA; LAWRENCE**
**FLYNN and DESLYN PATRAM FLYNN,**

      **Defendants.**

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY FEES AND MEMORANDUM OF LAW

Defendants OMNI MANAGEMENT GROUP LLC, ALL SEASONS TRAVEL AND RESORT, LAWRENCE FLYNN AND DESLYN PATRAM FLYNN, (collectively "Defendants"), by and through their undersigned counsel, file this Response in Opposition to Plaintiff's Motion for Attorney's Fees and Costs (with the Exhibits attached thereto) and state as follows:

### I.     BACKGROUND

Plaintiffs initiated suit on July 19, 2018, with a four (4) count complaint [Doc 1] alleging Defendants violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the Florida Minimum Wage Act,  and Florida Constitution, Art. X, Section 24(1). It was brought as a collective action and a class action.

Plaintiffs' material allegations were that they were misclassified as salaried, yet they were paid hourly or by commission, they were required to work more than 40 hours per week without

receiving the overtime premium and that at times they were paid less the legal minimum wage. On August 6, 2019, Plaintiffs filed an Amended Complaint [Doc 8] to add Count V for retaliation which was brought by Stephanie Forrester alone. Plaintiffs are not entitled to attorneys fees for this matter. Count V alleged Defendants retaliated against her in violation of the FLSA and the FMWA by terminating her for filing this lawsuit. On September 25, 2019,  Hannah Zuehlke filed a consent to become an opt-in plaintiff [Doc16]. Plaintiffs served discovery on defendants and eventually filed Motions to Compel responses to the discovery when discovery disputes could not be resolved. Defendants first counsel withdrew and Defendants obtained new counsel in early March. The parties agreed to forgo discovery and instead participated in mediation on April 3, 2019, which resolved all the wage claims that were made as well as other claims. However, the parties were not able to agree on a reasonable amount for Plaintiff's attorney fees and that is the issue now before the Court. No depositions were taken by either side and according to Plaintiffs' many emails complaining that Defendants had produced nothing until the payroll records (which Plaintiffs claimed were insufficient) were produced in late January 2019[1], Plaintiffs did not have to spend time wading through voluminous documents. Yet, somehow Plaintiffs still unabashedly billed nearly 300 hours in this small case.

As Plaintiffs state in their motion and declaration, throughout this case, they often told Defendants they wanted to settle. However, that assertion is undermined by their conduct. Plaintiffs never made one concrete settlement demand until March 25, 2018. They cannot claim they needed more documents or did not have enough information. Plaintiffs knew what range their claims were in early October 2012. In Doc 48-1 Pg 7 dated October 12th, Feldman states, "the

---

[1] Oddly, Doc 48-1 pg. 23 is an email from Feldman accusing Defendants of failing to produce a single piece of paper or files, yet that same day Quintus has billed 1.33 reviewing documents produced by Defendants. This type of billing inconsistency (in addition to other billing issues) casts doubt on the veracity of Plaintiffs' fee application. why they are

wages owed to our clients will very quickly be eclipsed by the attorney fees your clients incur and pay." In 48-1 Pg 10, dated October 16, 2018, he says, "Unfortunately the attorney fees will greater than the value of the wages owed to our clients very quickly…" In 48-1, Pg 13 dated November 15, 2018, Feldman starts with "Still no interest in your client resolving? The fees are over $35,000 and only going up from here." He continues, "Moreover the claims of Brown are small as she was employed just a short time" but does not say what her claim is. In that same document he says, "by the time depositions are over, the fees will be $50,000[2]," essentially promising/threatening to rack up his fees. Next, In 48-1, Pg 17, Feldman states, "your clients really want to spend more in attorneys fees then (sic) it would take to potential (sic) the weigh (sic) claims? Fees going way up" implying he knows the range of the claim, but does not make a demand; In an email dated March 25th from Feldman to Hultman he claims more than 198 hours. On March 28, his email claims more than 215 hours have been spent and he  demanded $80,000 for fees;  (See Composite Exhibit A).

Demanding settlement without making a demand or giving Defendants any information regarding the amount of the claim is an excellent way to avoid settlement while claiming you tried everything. While appearing desperate to settle, yet doing nothing to accomplish a settlement, they rushed the litigation with demands for depositions, lengthy duplicative requests for documents and interrogatories, etc., as if afraid that if they did not litigate quickly, the case might actually settle before the fees increased sufficiently. It is hard to understand why else this small case created so much busy work for Plaintiff's counsel.

It was not until March 25, 2019, in Doc 48-2  that Plaintiffs finally showed their cards and made a concrete demand, *eight months* after the start of the litigation. The demand showed that

---

[2] Despite claiming nearly 300 hours, no depositions were taken prior to settlement.

Feldman was right-the claims were small. It was only then that Defendants were able to evaluate settlement.

While Defendants were considering their response to the March 25th demand, on March 28, 2019, a second, higher settlement demand was received made (a total of about $3,000 for all three plaintiffs).  This demand added previously unraised claims, including an action under the civil theft statute (Exhibit B letter from Feldman to Hultman). Defendants had not produced any documents nor had anything changed in the three-day interim, so it is difficult to understand why this demand was not made on March 25th, instead of sending two separate demands three days apart. In any case, the higher demand, coming shortly after the first, and adding claims for civil theft supported Defendants long-held concern that Plaintiffs were not acting in good faith. In light of Plaintiffs' questionable conduct, Defendants believed negotiations would be more productive if they were supervised by a mediator.

It incomprehensible as to why Plaintiffs never made a settlement demand for eight months, other than to ratchet up the fees as they promised Defendants would happen. Plaintiffs fees deserve a substantial reduction.

## MEMORANDUM OF LAW

Prevailing parties in FLSA suits are entitled to attorney's fees. The statute provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As this provision makes clear, the key metric by which a motion for attorney fees is evaluated is "reasonableness." *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). In awarding attorneys' fees, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to

see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).

The United States Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), set out the framework for evaluating the reasonableness of attorney-fee awards for prevailing plaintiffs. The starting point is a calculation of the "lodestar"—the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate. *Id at. 433.* As the movant, Plaintiffs have the burden of producing evidence to support the hours worked and the rates claimed. *Id.* Sufficient evidence is more than just an affidavit of the attorney who performed the work. *Norman v. Housing Auth. of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988)."A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. The relevant legal community is the place where the case is filed. *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The Eleventh Circuit has stated that the factors in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974), may be useful in establishing an hourly rate. *Norman,* 836 F.2d at 1299-1300.

In *Hensley*, the Court asserted that it has discretion in determining a reasonable fee; it may "identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. The Court should exclude hours that were not "reasonably expended"; in other words, hours that were "excessive, redundant, or otherwise unnecessary." *Hensley* at 434.The Court may also rely on its own knowledge and experience when evaluating fees that seem excessive. Norman, 836 F.2d at 1303.

It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper in accordance with those parameters. *See, e.g., Columbus Mills, Inc. v. Freeland,*

918 F.2d 1575, 1580 (11th Cir. 1990) ("The *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours."); *Cullens v. Georgia Dept. Of Transp.*, 29 F.3d 1489, 1493 (11th Cir. 1994) ("We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted). Any fees awarded must be reasonable and fall within the guidelines the Eleventh Circuit has promulgated. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). Plaintiffs' requested fees are far exceed the bounds of reasonableness.

## I.      Reasonable Hourly Rates

The Plaintiff has requested the following hourly rates: Mitchell Feldman $400/hour, Jason Quintus $275/hour, Benjamin Williams $350/hour and Kimberly Lewis $150. As support, Feldman points to his declarations and the affidavits attached. However, not only are the affidavits unrelated to this case, Barack and Fenton state that an appropriate rate for Feldman is $350/hr not $400. In his declaration, Feldman himself states that his typical hourly rate is $350. Furthermore, *Zaragoza v. Qoncert, LLC*, 2014 U.S. Dist. LEXIS 35070, (U.S. Middle District Fla., Feb. 21, 2014) agreed $350/hour for Feldman.[3]   Based on his experience Defendants would agree to $350/hour for Feldman. This immediately reduces the fees by $9030. Defendants agree to $275 for Jason Quintus based on his qualifications, however, Defendants reject the entire amount of $795 for Kimberly Lewis because her entries describe secretarial work. Although she did Prepare a Notice of Pendency and Certificate of Interested Parties, apparently it was so poorly done that

---

[3] That court reduced his hours by 25 hours from his claimed 85.7 hours due to his failure to comply with Local Rule 3.01(g).

on 8/6, Feldman had to spend .6 for the same thing (tasks that an experienced attorney should take about .2 total). Mr. Williams billed .4 hours and Defendant accepts his rate and the time spent.

### II.      The Issue of Whether the Number of Hour Expended was Reasonable

As Defendants will show, and as the Court can easily discern, Plaintiffs' billing practices were reckless and the hours reported were grossly overstated. Thus, Defendants argue that the *number* of hours being sought by Plaintiffs' counsel is unreasonably excessive and argue that a reasonable fee award would be no more than $25,000.

### Plaintiffs' Fees Are Excessive for This Garden Variety, Nominal Wage Claim

The wage claims were not novel or unique. The case involved three (3) plaintiffs who, along with their attorney,  knew their claims were at best nominal. The only unique thing about this case is that Plaintiffs' attorneys' have the audacity to claim nearly $101,000 for a case that garnered less than $15,000 for three plaintiffs, where the wage claims could have been settled in less than four months if Plaintiffs had made a demand.

A cursory review of the billings compared to the case filings and communications with Defendants demonstrate that Plaintiffs over-litigated this case and ignored every sense of proportion.  This was filed as a collective action, but given the size of the employer (form 12-16 employees, including managers), it would have remained a small case. Yet from the start, this case was always over-staffed by at least two highly paid, at times joined by a paralegal, a sure way to guarantee excessive fees.  Plaintiffs' counsel spent considerable time researching and arguing about electronic discovery and very technological issues, all of which were wholly unnecessary for the nominal wage claims Plaintiff brought. All those entries should be reduced to 25% (from to give the benefit of the doubt that a wage claim as small as Plaintiffs might need a smattering of ESI.

Next, many entries improperly contain block billing, combining several items for large chunks of time, and other entries with of an hour or two or more had no detail at all, just "file review." None of these practices should be compensated by Defendants.

It is the position of the Defendants that the Plaintiffs' hours grossly exceed the standard of reasonableness and worse, they were careless. They gleefully billed for every single activity, even activities for other cases, expecting Defendants to pay. One indication is that although most communication was by emails and those attached to Plaintiffs' Motion were almost all were a handful of sentences. Those same emails appear in the billing records for comparison and it is evident that the mere act of reading a short email was billed at .3. For example, the very first email from Greg Hearing to Feldman (Doc 48-1, Pg 1) was three short sentences; Feldman billed .3 to read it. The billing records are replete with excessive time spent, duplicate hours and even secretarial work (although that is minimal).

This issue of Plaintiffs' contention that their exorbitant fees are Defendants' fault because they did not settle has already been examined above, as has Plaintiffs' contention they were hampered by Defendants' failure to provide documents. Plaintiffs emails belie the claim that Defendants failure to provide documents hampered settlement based on the fact that in early October, Plaintiffs had a clear idea about the wages they were claiming. Suffice it to say, Plaintiffs' counsel had no real interest in settling; if he had, a settlement demand would have come in October, not late March.

**Entries That Should Be Eliminated Entirely:**

There is plenty of low-hanging fruit-time billed that is obviously improper. One need not be a legal scholar of expert in attorneys' fees to make that determination. Among the entries requiring deletion are:

-Was it mere carelessness or intention that the first page of Plaintiff's invoices contains entries totaling that clearly pertain to another case?  Those **15.1 hours** must be deleted.

-As explained above, Kimberly Lewis' time is unjustified. That eliminates another **5.3 hours**.

-There are billings for phone calls with prospective clients. .8 for Hampton on 7/25, an entry for .6 and another for .2 on 9/28 with an unnamed new client; .6 for someone named Greenwell on 4/12, *after* the claims had been settled. Defendants should not be required to pay for Mr. Feldman's marketing.  That totals **2.2 hours**.

-All entries related to Forrester's Retaliation claim. This includes all entries pertaining to the Amended Complaint which had no material changes except to add Count V.[4] The following entries should be deleted (all are MF): 7/25 .3;  7/30 .5, 7/30 2.6; 7/30 3.4; 8/2 .8, 8/3 1.8; 8/3 .6; 8/3 .2; 8/4 .3; 8/6 1.5; 8/6 .7; 8/6 .3; 9/28 .5; 10/15 .4; 10/16 .4;, totaling 13.3 hours to be deleted. Plus at least 40% of the whopping 70 hours Plaintiffs spent preparing for and attending mediation which covered both the wage claims (small and relatively easy to resolve) and the retaliation claims.  That eliminates another 28 hours and total of **41.4 hours** attributed to the Retaliation Claims that should be deleted.

-Time billed for a Second Amended complaint that was never filed. 2.8 hours on 10/13; and 1.5 on 2/18; **4.3 hours** deleted

-Time billed for "File Review" without further description

**Excessive Billing for Particular Matters:**

Plaintiffs have billed excessively on certain topics. A review of the entries for preparing the Case Management Report (9.6 hours), Motions to Compel (37.51), deserves reduction because the entries disclose work duplicated by Quintus and Feldman, block billing making it impossible to determine precisely what was done, ambiguous entries and excessive time spent by attorneys claiming expertise in wage and hour litigation.  Furthermore, the Motions to Compel were brought despite the fact that the case was in the very early stages and it was not necessary to engage in the Rambo like tactics, demanding extensive discovery on the most detailed matters, when Plaintiffs already knew for a fact their claims were small. Defendants believe a minimum 20% reduction (7

---

[4] Plaintiffs offer a 10% reduction in the amount for the retaliation claim, but it is insufficient to cover the billings for that claim.

hours) for the Motions to Compel alone is warranted and a 15% reduction in the time spent on Case Management issues.

The most overbilled area is the 70 hours billed for mediation preparation and attendance. Defendants have already proposed the mediation preparation and attendance should be reduced by 40% to eliminate time billed for the retaliation claim which was a significant part of both the preparation and the mediation itself. However, to refine that further, 8 hours should be deduction for the attendance by Jason Quintus with Mitchell Feldman. As an attorney with more than 20 years' experience, there is no reason attorney Feldman needed hand-holding by a junior attorney to mediate this simple wage claim. It is certain Mr. Quintus would have been as effective if he had been available by phone. All the calculations had already been done and prior to the mediation, there are multiple entries by both Quintus and Feldman reviewing payroll documents (for the wage claim amounts they knew back in October) and multiple entries for spreadsheets and as well as analysis of damages. For two attorneys who had been involved in this case since the beginning and undoubtedly knew the case back and forth, the amount of preparation time spent is absurd. The spreadsheet was part of the email to the undersigned from Quintus on March 25th and the letter from Feldman to the undersigned on March 28 and each consisted of less than ¼ of a page. The PowerPoint was a reproduction of the spreadsheet.

The hours spent for separate meet with the clients to prepare them for mediation is ludicrous. Clients listen and confer with their attorney at the mediation. Other than explaining how a mediation worked and what to expect, what more is required? Defendants contend that the 70 hours for mediation should be reduced to a more realistic number of 20-25 hours, including attendance at the mediation.

The next area which was billed excessively is the preparation of the Motion for Fees. Plaintiffs billed 20.5 hours, including 3.3 hours to review time records to check for accuracy. The mere fact that Plaintiffs could have included entries indicate the need for a reduction in the amount billed for the motion. Next, the declaration and the motion are somewhat redundant. Defendants therefore propose a reduction from 20.5 hours for the fees Motion to 14 hours to take into account the failure to actually provide accurate records and to reduce the 3.6 hours of legal research on an issue attorney Feldman should be quite familiar with, given the prior Motions for Fees he has filed.

### III.    The Results Achieved by Plaintiffs

Once the district court reaches an amount using the lodestar determination, it may then adjust that award in light of the plaintiff's "level of success." See Hensley, 461 U.S. at 436. In Hensley, the Supreme Court set forth the basic approach to be taken by a district court in determining whether to adjust the modified lodestar amount to account for a plaintiff's limited success. See id. at 434-38. In a case involving a single claim or related claims, the court is directed to ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id. at 434.Plaintiffs' counsel gloats in paragraphs 28-31 of his Motion that he collected more than Plaintiffs had claimed, however if you review Plaintiffs' demand in the March 28th Letter (Exhibit B), that is not true. Furthermore, the additional payment for other alleged claims was  made to secure a waiver and general release. Plaintiffs' counsel does not deserve any increase for obtaining less than he sought.

### IV.    Calculation of Costs

Defendants do not dispute $560 in costs.

### V.    Conclusion

There is no basis for a fee demand of even $25,000 for a case like this. To see a demand for $100,000 is outrageous – a word overused, but appropriate here. During the course of the lawsuit, there were disputes between former defense counsel and Plaintiffs' counsel which may have slowed the litigation process, however, many appear to have been were instigated by Plaintiffs' counsel's unrelenting and unreasonable demands and over-reaching, his tendency to bully instead of persuade and his failure to keep the issues of the case in perspective. In light of all the foregoing, the Defendants believe that $20,000 to $25,000 more than adequately compensates Plaintiffs' counsel for the work performed, particularly in light of his tactics.

WHEREFORE, the Defendants urge the Court to grant the Plaintiffs' Motion for Attorneys' Fees and Costs, but *only in part*. The Plaintiffs should be awarded no more than $25,000.00 in attorneys' fees and no more than $560.00 in costs. In all other respects, the Plaintiffs' Motion for Attorneys Fees and Costs should be denied.

*/s/ Lorraine Hultman*
LORRAINE MAASS HULTMAN, ESQ.
Florida Bar Number: 250511
NIKHIL N. JOSHI, ESQ.
Florida Bar Number: 123803
*Attorneys for Defendants*
Of Counsel, Miller Tack & Madson
2055 Wood Street, Suite 208
Sarasota, FL 34237
(941) 953-2828
(941) 953-3018 Fax
lori@peolawyers.net
nik@peolawyers.net
djohnson@hsjlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I, HEREBY CERTIFY that on this 20th day of June, 2019, a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and that copies of the same have been served via email to:

> Mitchell L. Feldman, Esq.
> Florida Bar No. 008349
> *Attorney for Plaintiffs*
> Feldman Williams PLLC
> 6940 W. Linebaugh Ave. #101
> Tampa, Florida 33625
> (813) 639-9366
> (813) 639-9376 Fax
> mlf@feldmanlegal.us

> ***/s/ Lorraine Hultman***
> LORRAINE MAASS HULTMAN, ESQ.
> Florida Bar Number: 250511
> NIKHIL N. JOSHI, ESQ.
> Florida Bar Number: 123803
> *Attorneys for Defendants*
> Of Counsel, Miller Tack & Madson
> 2055 Wood Street, Suite 208
> Sarasota, FL 34237
> (941) 953-2828
> (941) 953-3018 Fax
> lori@peolawyers.net
> nik@peolawyers.net
> djohnson@hsjlawfirm.com